*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0287p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

SHAWN ALEXANDER,

        *Plaintiff-Appellant,*

    *v.*

CARESOURCE,

        *Defendant-Appellee.*

No. 08-3880

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 07-00198—Michael R. Merz, Magistrate Judge.

Argued: April 21, 2009

Decided and Filed: August 14, 2009

Before: BATCHELDER and COLE, Circuit Judges; LAWSON, District Judge.[*]

_____

## COUNSEL

_____

**ARGUED:** Kendall Duane Isaac, THE ISAAC FIRM, LLC, Columbus, Ohio, for
Appellant. Vladimir P. Belo, BRICKER & ECKLER LLP, Columbus, Ohio, for
Appellee. **ON BRIEF:** Kendall Duane Isaac, THE ISAAC FIRM, LLC, Columbus,
Ohio, for Appellant. Vladimir P. Belo, BRICKER & ECKLER LLP, Columbus, Ohio,
Mark R. Chilson, BRICKER & ECKLER LLP, West Chester, Ohio, for Appellee.

_____

## OPINION

_____

DAVID M. LAWSON, District Judge. The issue in this appeal of a grant of
summary judgment to the defendant in this employment discrimination action is whether
the plaintiff's response in the district court was adequate to establish a material fact issue

_____
[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of
Michigan, sitting by designation.

in proving her *prima facie* case. The district court found the plaintiff's submissions wanting, and we agree. In responding to the defendant's motion for summary judgment, the plaintiff failed to submit adequate evidence in the form required by Federal Rule of Civil Procedure 56(e), and the other evidence in the record did not rebut the defendant's contention that it was entitled to judgment in its favor as a matter of law. Therefore, we affirm the judgment of the district court.

I.

Plaintiff Shawn Alexander, an African American woman, applied for a job as a claims analyst with defendant CareSource Management Group in 2005. Although she was interviewed for the position, the defendant hired Caucasian applicants instead. The plaintiff believes that race played a role in the defendant's decision, as evidenced, she alleges, by the more rigorous application and interview protocols demanded of the plaintiff compared to the Caucasian applicants.

CareSource provides services for the administration of public sector health care programs, operating Medicaid health plans in Indiana, Michigan, and Ohio. In 2005, the claims department had approximately sixty employees and only two managers: Gary North and Linda Hay. In May and June 2005, CareSource sought to fill two claims analyst positions, one for Michigan and one for Ohio. Claims analysts are responsible for analyzing and processing claims that have been rejected from an automatic electronic processing system. North assumed responsibility for hiring the Michigan claims analyst, and Hay was responsible for the Ohio position. Prospective candidates would interview with human resources consultant Lara Bentley before meeting with North or Hay or both, depending on their availability. Both internal and external candidates were interviewed for the position, although, according to Bentley, the internal candidates were not asked questions about their preference regarding management structure because Bentley assumed they were already familiar with the management of the claims department.

The plaintiff apparently learned about the job openings from her friend Claudette Wheeler with whom she worked at Miami Valley Hospital. According to Lara Bentley's

affidavit, Wheeler was interviewed on June 3, 2005, after being referred to Bentley by Charritye LeMoine, a CareSource claims department employee. Bentley says she waived the requirement that Wheeler complete an employment application because Wheeler was interviewing on her lunch break and therefore was under time constraints. Wheeler interviewed with only Bentley and Hay because North was not in the office. Bentley asked Wheeler about her preferred management style, and based on Wheeler's response Bentley concluded that Wheeler would thrive in a hands-off management atmosphere like the one in the claims department. Wheeler was offered a position on the same day as her interview, but declined the offer.

Alexander was interviewed for the open Michigan claims analyst position on June 29, 2005. Bentley recalls Alexander stating that she "preferred well-organized management and strong communication between herself and the department manager," which Bentley found incompatible with the management structure of the claims department. Record on Appeal ("ROA") at 60. Following this meeting, both North and Hay interviewed Alexander, and both found that Alexander was "unable to provide accurate and/or detailed responses to many questions asked." ROA at 54. They noted Alexander's belief that the acronym "COB" referred to "Collaboration of Benefits" rather than "Coordination of Benefits," and her inability "to fully explain the COB process." ROA at 54-55. As a result of the interview, Hay and North concluded that Alexander did not know enough about claims processing to work effectively as a claims analyst. She was not offered the job.

The Michigan claims analyst position ultimately went to Kim Seiber, who had been employed by CareSource in a provider customer service position. Seiber, apparently, is Caucasian. She interviewed for the position on June 28, 2005, the day before Alexander. According to North, Seiber provided "satisfactory" answers to his questions and he believed that she had received positive performance reviews in her previous position. ROA at 54.

On July 7, 2005, Bentley telephoned Alexander to inform her that the position was given to another candidate. The following day, Alexander filed a charge of race

discrimination with the Ohio Civil Rights Commission (OCRC) and the Equal Employment Opportunity Commission (EEOC).  On May 11, 2006, the Ohio Civil Rights Commission concluded that there was probable cause to believe that CareSource violated the law when it did not hire Alexander.  The determination states that Alexander met the job qualifications for the claims analyst position, and after she was refused the job, CareSource continued to interview others "with very similar qualifications as Charging Party."  ROA at 81.  The report then stated:

> On June 3, 2005, Respondent interviewed a Caucasian applicant for Claims Analyst.  Unlike Charging Party, this similarly situated person was not required to submit an employment application, and was offered a position the same day she was interviewed by Respondent.  Charging party became aware of these facts only because she worked alongside this person during Respondent's interview process.

*Ibid.*  On May 2, 2007, citing the Ohio Civil Rights Commission's finding, the EEOC issued a determination that there was probable cause to believe that the allegation of race discrimination was true; but on May 9, 2007, the EEOC issued a correction, stating that the May 2, 2007 document was "null and void, and of no legal significance."  ROA at 15.  The EEOC issued a right-to-sue letter that same day.

On May 24, 2007, Alexander filed a *pro se* complaint in the United States District Court for the Southern District of Ohio.  She was granted *in forma pauperis* status.  The complaint – which is not verified – states that she believes she was "unlawfully discriminated against because of my race, African American."  ROA at 9.  Attached to the complaint is the charge of discrimination filed by the plaintiff with the OCRC and the EEOC.  In this charge, which was notarized and signed under penalty of perjury, Alexander states that she is an African American, the position at CareSource was offered to Wheeler, a Caucasian, and Wheeler's interview was less rigorous than Alexander's because Wheeler was asked less difficult questions.  Counsel entered an appearance on behalf of Alexander on July 12, 2007 but did not file an amended complaint.  The parties consented to plenary jurisdiction over the case by United States Magistrate Judge Michael Merz under 28 U.S.C. § 636(c).

Alexander took at least two depositions in the case, but it does not appear that she sought formal discovery in any other form. CareSource moved for summary judgment, attaching three affidavits, one with "interview notes" of the candidates. Alexander responded, attaching various documents, including the letters from the OCRC and the EEOC, and portions of depositions of CareSource's employees. Alexander never submitted an affidavit to the district court, nor any pages of her deposition transcript. She did, however, submit a document purporting to be her resume. The resume states that she has a high school education, and worked as a data processing clerk from 1988 to 1994. From 1994 to 2003, she worked as a claims processor for Anthem Blue Cross and Blue Shield. From 2003 to 2006 she worked for Miami Valley Hospital as a patient account representative. According to her complaint, she was laid off by the hospital in 2006 and was forced to live in a homeless shelter.

Alexander also submitted a document that purports to be a resume of David Roush. It appears that Roush had worked since 2000 as a claims analyst for Anthem Blue Cross Blue Shield. Before that he worked in various customer service jobs since 1980. According to Alexander's brief, Roush was hired for a claims analyst position covering Indiana, he did not have a completed application on file, and he is Caucasian.

CareSource responded to the plaintiff's submissions by asking the district court to strike all of Alexander's exhibits except the deposition transcripts because they were not authenticated by an affidavit or deposition testimony. The district court granted the motion to strike the exhibits as well as the motion for summary judgment, and entered judgment against Alexander on June 3, 2008. Alexander filed a timely notice of appeal and contends that the district court erred by granting summary judgment and disregarding her exhibits.

## II.

This court reviews a district court's grant of summary judgment *de novo* and applies the same standard as the district court. *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004); *Lake v. Metro. Life Ins. Co.*, 73 F.3d 1372, 1376 (6th Cir. 1996). The parties' arguments in this case suggest that it may be useful to review those standards once again.

Both claimants and parties defending against a claim may move for summary judgment "with or without supporting affidavits." Fed. R. Civ. P. 56(a), (b). Such a motion presumes the absence of a genuine issue of material fact for trial. The court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). Once that occurs, the party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make her case with a showing of facts that can be established by evidence that will be admissible at trial. Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."). In fact, "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (citing *Skousen v. Brighton High School*, 305 F.3d 520, 528 (6th Cir. 2002)). Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment. *See* Fed. R. Civ. P. 56(e).

The submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S.

317, 324 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). Otherwise, affidavits themselves, albeit made on personal knowledge of the affiant, may not suffice, since they are out-of-court statements and might not be admissible at trial. *See* Fed. R. Evid. 801(c), 802.  However, the party opposing summary judgment must show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary.  Such "'evidence submitted in opposition to a motion for summary judgment must be admissible.'" *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting *United States Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997)).  That is why "'[h]earsay evidence . . . must be disregarded.'" *Ibid.*; *see also North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997) ("[T]he testimony of Chaffee is inadmissible hearsay and therefore cannot defeat a motion for summary judgment.").  It is also the basis of this court's repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e). *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 532 n. 5 (6th Cir. 2002); *see also Meals v. City of Memphis, Tenn.*, 493 F.3d 720, 728-29 (6th Cir. 2007); *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) ("This court has ruled that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991), and *State Mutual Life Assurance Co. of America v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979))).

The dispute in this case focused on whether the plaintiff's race played any role in the defendant's decision not to hire her.  She never contended that there was any direct evidence of that motivation, so the district court used the familiar *McDonnell Douglas* burden-shifting methodology to determine whether the plaintiff could establish by circumstantial evidence that race was a motive in the defendant's refusal of employment.  Under the *McDonnell Douglas* approach, "(1) the plaintiff must establish a prima facie case of racial discrimination; (2) the employer must articulate some legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff must prove that

the stated reason was in fact pretextual." *Dunlap v. Tennessee Valley Authority*, 519 F.3d 626, 630 (6th Cir. 2008) (citing *Harrison v. Metro. Gov't of Nashville and Davidson County*, 80 F.3d 1107, 1115 (6th Cir. 1996)).

A plaintiff can establish a *prima facie* case by showing that "(1) she was a member of a protected class; (2) she applied for and was qualified for the position . . . ; (3) she was considered for and denied the position; and (4) she was rejected in favor of another person with similar qualifications who was not a member of her protected class." *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996) (citing *Brown v. Tennessee*, 693 F.2d 600, 603 (6th Cir. 1982)). CareSource argued in the district court that Alexander was not qualified for the position and that there was no other similarly-situated person outside the protected class who was treated differently than she was. In support of its motion, CareSource filed affidavits by its employees, Linda Hay, Gary North, and Lara Bentley. Those witnesses described the sequence of events that led to the interviews of the plaintiff and others, the qualifications that were important to them, how they determined to evaluate those qualifications, and the reasons they decided to hire the successful applicants rather than the plaintiff. They also provided a rationale for the differences in the interview processes and some of the questions asked, attributing those differences to prior familiarity with some of the job applicants, while the plaintiff was a stranger to them.

In response to the motion, the plaintiff filed a memorandum that included as attachments an e-mail printout from a co-worker to Claudette Wheeler, the plaintiff's handwritten notes, a typed paragraph of undetermined origin, CareSource's job description of the open positions, letters from the OCRC and the EEOC, resumes of the plaintiff and another individual, and excerpts from two depositions taken in the case. Based on those items, the plaintiff argued that she proved that she was qualified for the position, she was treated differently during the interview process than other individuals, and the persons who were hired for the claims analyst positions were not as qualified as she.

*Sworn statements*

The record contains two types of sworn statements submitted by the plaintiff. One was a copy of the verified charge she submitted to the EEOC and OCRC. That document stated that the plaintiff is a member of a protected class (African American); she believes she is qualified for the position of claims analyst, although the statement is conclusory and contains no supporting facts; she interviewed for that position; CareSource offered the job to Claudette Wheeler, who did not fill out an application; the plaintiff was required to fill out an application; and the plaintiff "was asked more difficult questions than Ms. Wheeler, ie [sic] multiple problem solving questions." ROA at 13. This document establishes the plaintiff's protected class status and the difference in treatment she received compared to Ms. Wheeler's experience, but it does not amount to evidence that the plaintiff is qualified for the position. Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment. *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (finding that "conclusory statements" unsupported by specific facts will not permit a party to survive summary judgment); *Doren v. Battle Creek Health System*, 187 F.3d 595, 598 -599 (6th Cir. 1999) (holding that affidavits that contained no "specific facts" but "are merely conclusory, restating the requirements of the law . . . therefore cannot create a genuine issue of material fact sufficient to defeat summary judgment").

The second type of sworn statement was deposition testimony. Rule 56(c) makes specific reference to the discovery materials "on file." The plaintiff did not file the entire transcript of the depositions of Lara Bentley or Gary North; she did submit excerpts of those depositions. We do not read Rule 56(c) to prohibit filing only part of a deposition. Excerpts of depositions are allowed – and many times preferred by the district court – if they are properly authenticated. *See Pfeil v. Rogers*, 757 F.2d 850, 859-60 (7th Cir. 1985) ("We fail to understand why the district court refused to consider the deposition excerpts contained in the affidavits since the affidavits were sworn statements of recited testimony excerpted from certified depositions that had been filed with the district court and complied with the Rule 56(e) requirement that 'certified

copies of all papers . . . referred to in an affidavit shall be . . . served therewith.'"). To authenticate a deposition excerpt, a party should include the cover sheet (which the plaintiff did) and the court reporter's certificate (which the plaintiff failed to do). *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) ("A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent.") (citing Fed. R. Evid. 901(b)); Moore's Federal Practice § 56.14[2][a] (observing that "one proper cover page and certification will suffice for authentication of the excerpts from that deposition"). The defendant takes no issue with the deposition excerpts' authenticity, however, so we will consider them, as did the district court.

The deposition excerpts in this case do little to establish a factual dispute on the questions whether the plaintiff was qualified for the position and a non-class member treated more favorably was similarly situated to the plaintiff. Gary North testified that he did not remember interviewing one of the applicants, he knew Claudette Wheeler and was familiar with her work, lack of knowledge of the claim-processing software was not disqualifying for an applicant, the plaintiff may have been the only candidate from outside the company that was interviewed, and the plaintiff was unfamiliar with several terms a claims analyst must know to perform the job. Lara Bentley testified that she believed the plaintiff would not have been a good fit because of her preferred management style and lack of technical skills. The deposition excerpts did not establish a genuine dispute on a material fact.

*Non-sworn documents*

The district court did not consider many of the other documents attached to the plaintiff's response because they were not authenticated or otherwise were inadmissible in evidence. As noted earlier, because the defendant objected, it would have been improper for the district court to consider documents that were not admissible in evidence. *Moore*, 2 F.3d at 699. Charritye LeMoine's e-mail, the hand-written notes, the unidentified typed paragraph, the plaintiff's and David Roush's resumes, and the

annotated resume of Jennifer Reibert were not authenticated, and the plaintiff has made no argument suggesting a ground under which they might be admissible. The job description was generated on CareSource's letterhead. That document contains a trade inscription indicating the source of origin of the document, and it is self-authenticated under Federal Rule of Evidence 902(7). *See Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F. Supp. 2d 418, 438 (N.D.N.Y. 2007) (finding that self-promoting materials that contain a company logo are self-authenticating); *Milton H. Greene Archives, Inc. v. BPI Communications, Inc*., 378 F. Supp. 2d 1189, 1195 n.3 (C.D. Cal. 2005) (concluding that advertising campaign books "are also self-authenticating as items bearing trade inscriptions") (citing Fed. R. Evid. 902(7)). However, the job description contains only a list of minimum qualifications. The plaintiff never offered admissible evidence that she met those qualifications, and the document provides her with no help on the question whether she was similarly situated with the successful applicants.

*EEOC and OCRC reports*

The plaintiff relies heavily on the reports of the administrative agencies finding probable cause that discrimination had occurred. The determination by the Ohio Civil Rights Commission is signed by a team leader and contains the Seal of the State of Ohio. The EEOC letter dated May 2, 2007 is signed by the district director and contains the agency's seal. Both of those documents are self-authenticated under Federal Rule of Evidence 902(1). *See United States v. Rigsby*, 943 F.2d 631, 638-39 (6th Cir. 1991). The EEOC letter, however, was withdrawn by that agency and declared "null and void" in a letter issued one week later, signed by the same district director.

The OCRC determination was offered for its truth, and therefore amounts to hearsay as defined by Rule 801(c), but it conceivably was admissible under Federal Rule of Evidence 803(8), which states:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless

the sources of information or other circumstances indicate lack of trustworthiness.

Fed. R. Evid. 803(8). The OCRC letter contains a recitation of facts that tracks closely the events documented in the affidavits submitted by the defendant: that the plaintiff was required to fill out a job application, but a Caucasian applicant who was offered the position the same day as the interview was not. The letter also contains conclusions beyond mere factual findings. However, the Supreme Court has held that a report that contains the agency's conclusion or opinion formed as the result of a factual investigation is admissible under this rule. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988); *see also Bank of Lexington & Trust Co. v. Vining-Sparks Securities, Inc.*, 959 F.2d 606, 616 (6th Cir. 1992) ("Opinions, conclusions, and evaluations, as well as facts, fall within the Rule 803(8)(C) exception."). Moreover, the Supreme Court, citing Rule 803(8), has observed that "[p]rior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial de novo." *Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39 (1976).

The OCRC letter concludes with a finding of probable cause that unlawful discrimination occurred. The district court gave no evidentiary weight to that finding for several reasons. We do not agree with all of them, but we do concur that the letter does not establish a material fact question. The district court first cited this court's unpublished opinion in *E.E.O.C. v. Ford Motor Co.*, 98 F.3d 1341, 1996 WL 557800 (6th Cir. 1996) (table), which authorized district courts to adopt a blanket rule refusing the admission of EEOC probable cause determinations at trial. In *Ford Motor Co.*, the court noted that "an EEOC cause determination carries an evidentiary value of practically zero," and that "the only plausible value of an EEOC cause determination would be that it presents the evidence of discrimination that the EEOC considered." 1996 WL 557800 at *10. Certainly there are reasons for excluding a probable cause determination at trial. *See Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 201-02 (5th Cir. 1992) (recognizing that the district court has "discretion under Rule 403 to exclude such reports if their probative value is substantially outweighed by prejudicial effect or other considerations enumerated in the rule"); *Ford Motor Co.*, 1996 WL 557800 at *10

(noting that an EEOC report may contain evidence "that is properly excluded at trial," and that "an attempt by the EEOC to admit those parts of the EEOC cause determination becomes a not-too-subtle attempt to end-run the Federal Rules of Evidence"). However, at the summary judgment stage, the report ought to be considered for the factual material it contains to determine if a fact question is raised.

The district court also discounted the letter because it was not made on personal knowledge, citing Fed. R. Civ. P. 56(e). Rule 56(e) requires *affidavits* to be made on personal knowledge. And as a general rule, a hearsay "declarant is, of course, a witness, and neither [Rule 803] nor Rule 804 dispenses with the requirement of firsthand knowledge." Advisory Committee's Note to 1972 Proposed Rules, Rule 803; *see also United States v. Lanci*, 669 F.2d 391, 395 (6th Cir. 1982) (quoting advisory committee note and holding that hearsay exception of statement against interest requires that the declarant had personal knowledge); *cf.* Fed. R. Evid. 602. But the personal knowledge requirement does not extend to official reports admissible under Rule 803(8). *Combs v. Wilkinson*, 315 F.3d 548, 555-56 (6th Cir. 2002) (rejecting argument that an official report of a prison disturbance must be based on first-hand knowledge of investigating committee, which "based its report on 123 interviews and numerous documents, including all staff and inmate incident reports, as well as the investigative report completed by the Ohio Highway State Patrol"). In fact, it is unlikely that the report's author(s) will have any personal knowledge of the incidents investigated. Therefore, lack of personal knowledge is not a proper basis for exclusion of a report otherwise admissible under Rule 803(8). Exclusion of an official report is warranted only if the court finds that "the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8); *see also* 2 McCormick On Evid. § 296 (6th ed.) ("As the name indicates, these reports embody the results of investigation and accordingly are often not the product of the declarant's firsthand knowledge, required under most hearsay exceptions. Nevertheless, the nature and trustworthiness of the information relied upon, including its hearsay nature, is important in determining the admissibility of the report." (footnotes omitted)).

Another reason the district court concluded that the letter was entitled to little weight is that the conclusions were not tied to specific facts, and it was unclear what evidence the investigator considered in reaching her conclusion. We believe that is a valid reason for finding that the OCRC letter does not support the plaintiff's *prima facie* case, because it assesses the circumstances relating to the trustworthiness of the report. Several courts have held that the EEOC's opinion that there is reasonable cause to believe discrimination occurred or did not occur is excepted from hearsay under Rule 803(8), unless there is an indication of a lack of trustworthiness. *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1342-43 (3d Cir. 2002); *Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 64 (2d Cir. 1998); *Cortes*, 977 F.2d at 201; *Barfield v. Orange County*, 911 F.2d 644, 649 (11th Cir. 1990); *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304, 1309 (8th Cir. 1984). In this Circuit, "[t]o determine whether a report is trustworthy, courts consider the following four factors: (1) the timeliness of the investigation upon which the report is based, (2) the special skill or experience of the investigators, (3) whether the agency held a hearing, and (4) possible motivational problems." *Chavez v. Carranza*, 559 F.3d 486, 496 (6th Cir. 2009) (citing *Bank of Lexington*, 959 F.2d at 616-17). "This list of factors is not exclusive; any circumstance which may affect the trustworthiness of the underlying information, and thus, the trustworthiness of the findings, must be considered when ruling upon the admissibility of factual findings under this rule." *In re Complaint of Paducah Towing Co., Inc.*, 692 F.2d 412, 420 (6th Cir. 1982) (citations omitted).

"The trustworthiness of a factual finding is often a function of the trustworthiness of the information upon which the finding is based." *Ibid.* (citations omitted). In this case, there was no agency "hearing," the investigation lingered for over a year before the report was completed, and there is no information in the record as to the evidence available to the agency. It appears, however, the district court considered at least all of the same evidence examined by the OCRC team leader and arrived at its own conclusion. Because the lower court considered the same facts as the agency, the differing *conclusion* in the agency report does not by itself establish a material issue of

fact, and there is no error by the district court in not assigning evidentiary weight to that conclusion.

On *de novo* review of the summary judgment determination, we reach the same result. There is scant evidence that the plaintiff was qualified for the job. "The prima facie burden of showing that a plaintiff is qualified can . . . be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003) (en banc). This rule focuses the Court's inquiry on the "plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Ibid.* CareSource's job description amounts to evidence of the minimum job qualifications. There is no evidence as to what Alexander's qualifications for the position were, other than her unauthenticated resume. However, CareSource "identified [Alexander] as a potential candidate," ROA at 60, selecting her for an interview. This is extremely weak evidence, but it would allow a fact finder to infer that the plaintiff met the minimum job qualifications.

To prove that she was treated differently than similarly-situated individuals outside the protected class, the plaintiff compares herself to Wheeler and Roush, who were offered claims analyst positions for Ohio and Indiana, respectively. She argues that both of these individuals applied for a claims analyst position with CareSource contemporaneously with her application, so they must be similarly situated. Yet the "assertion that she satisfies her prima facie burden because she is similarly situated to [other candidates] by virtue of the fact that they applied for the same position and their applications were reviewed by the same committee fundamentally misconceives the concept of the fourth prong of the prima facie requirement." *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 241-42 (6th Cir. 2005).

CareSource argues that different, less satisfying answers during her interview render Alexander dissimilar to the other candidates. However, subjective impressions from an interview do not provide a valid basis for finding dissimilarity. *See id.* at 242

n. 6 (stating that "subjective traits or other details about why the non-protected person was in fact selected over the plaintiff" are not appropriate considerations at the *prima facie* stage of the analysis). CareSource also argues that Alexander is not similarly situated to the other candidates because she was only considered for the Michigan position, while Wheeler and Roush were offered claims analyst positions covering different states. But the fact that the alleged comparator was hired for a different position does not automatically defeat a plaintiff's claims. *See Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 705 (6th Cir. 2007). The only difference between the positions offered to Wheeler, Roush, and applied for by Alexander, appears to be the region from where the claims will be processed. There is no indication in the record that the positions were otherwise different in any way, and that the qualifications sufficient for one are different for another.

Missing from the record, however, is any evidence that Alexander's qualifications are comparable to those of Wheeler or Roush. Alexander's work history of claims processing only appears through her unsworn resume. The same is true for Roush. Nor is there any properly submitted evidence of Wheeler's qualifications. There is no evidence from which a reasonable jury could conclude that Alexander is similarly situated to either identified comparator, Wheeler or Roush.

But even if we were to conclude that the plaintiff established a *prima facie* case, "she has failed to produce any evidence that [CareSource's] decision was mere pretext." *Ladd v. Grand Trunk Western R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). CareSource identified the reasons it treated Wheeler and the plaintiff differently and why it chose applicants other than the plaintiff. It filed affidavits establishing that Alexander was not hired based on the answers she provided in her interview, which demonstrated a lack of knowledge for a position the employer sought to fill with someone who needed minimal training or adjustment. The defendant explained why it did not require Wheeler to fill out an employment application. CareSource made known its interest in in-house applicants over outsiders. It justified its less rigorous questioning of applicants who were known to the interviewers based on prior knowledge, which obviated questions that

would have elicited information the interviewers already knew. And it explained that it sought an applicant with a management style preference that was congruent with existing company practice. These explanations are legitimate, non-discriminatory reasons that shift the burden back to Alexander. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392 (6th Cir. 2008) (quoting *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 257-58 (1981)); *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 616 (6th Cir. 2003). Alexander has provided no evidence to contradict the affidavits submitted by CareSource regarding her interview answers. That failure of proof is fatal to her claim. *See Hartsel v. Keys*, 87 F.3d 795, 802 (6th Cir. 1996).

## III.

The district court properly concluded that the plaintiff failed to come forward with admissible evidence from which a jury could conclude that race was a factor in the defendant's decision not to hire her for one of the claims analyst positions it sought to fill. The summary judgment of the district court, therefore, is **AFFIRMED**.