NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0422n.06

Case No. 25-3035

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 12, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| THERESA A. KOVACS, | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNIVERSITY OF TOLEDO, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant - Appellee. | ) | OPINION |
| | ) | |
| | ) | |

BEFORE: SUTTON, Chief Judge; STRANCH and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** Theresa Kovacs served as a director in the human resources department at the University of Toledo. When the University announced its intention to promote another employee, Kovacs objected. The University later fired Kovacs, and Kovacs sued, asserting unlawful retaliation under Title VII of the Civil Rights Act of 1964. The district court granted summary judgment to the University, because Kovacs failed to establish a causal link between Kovacs's termination and her objection to the proposed promotion. We affirm.

**BACKGROUND**

**I.    Facts**

From 2003 to 2021, Theresa Kovacs held several positions in the University of Toledo's human resources (HR) department. In 2018 she became director of the academic, student services, and administration unit, where she managed hiring, recruiting, and talent management for the University's main campus.

In July 2020, the University hired a new interim president, who wanted to "moderniz[e]" the HR department. RE 17-1, Schroeder Dep., PageID 940. Two months later, as part of the modernization effort, the University fired Wendy Davis, the chief HR officer, and hired John Elliott to replace her. As the new chief officer, Elliott evaluated the HR department and identified several problems with Kovacs's team, including delayed response times and a lack of improvement plans. Elliott described the performance of Kovacs's team as, "at best, mediocre." RE 15-1, Elliott Dep., PageID 604.

In October, the University sought to promote its employee Tracey Brown by transferring her from a union to a non-union position and giving her a raise without advertising the job position. Kovacs objected, believing that the proposal failed to comply with Office of Federal Contract Compliance Program requirements and equal employment opportunity laws. Kovacs communicated these concerns to Matthew Schroeder, the University's executive vice president and chief financial officer. Kovacs also sent an email to Elliott, stating that Brown did not meet the minimum qualifications for the position and that promoting her without advertising the position would cause potential disparate-impact issues for minority candidates.

The following month, the University demoted Kovacs from the position of HR director to senior HR consultant, but kept her salary the same. The University claims it demoted Kovacs because of a "pattern of ineffective leadership." RE 16-1, Hurst Dep., PageID 804.

Kovacs assumed her new role in December 2020. Soon after, on January 26, 2021, Elliott fired Dreyon Wynn, a Black HR director. This termination followed the terminations of two other Black HR directors, including Davis. After being fired, Wynn called Willie McKether, the University's vice president of diversity and inclusion. Wynn told McKether that the University had recently fired three Black HR directors, whereas Kovacs, a white HR director, was merely

demoted and got to keep her salary. Wynn informed McKether that he would file charges of race discrimination with the Ohio Civil Rights Commission (OCRC). McKether relayed Wynn's allegations to Schroeder and met with the interim University president regarding the HR terminations.

On February 9, 2021, about two weeks after Wynn made the above allegations, the University terminated Kovacs's employment. The University claims it ended Kovacs's employment because she failed to attend various meetings, was frequently out of the office, did not offer mentorship to team members she was assigned to train, and failed to adequately complete certain projects. Kovacs, by contrast, claims the University fired her because she objected to the proposal to promote Tracey Brown.

## II.     Procedural history

Kovacs first submitted an employment-discrimination charge against the University to the OCRC.[1] After investigating, the OCRC issued a letter finding probable cause that the University had engaged in unlawful employment practices against Kovacs.

Kovacs then filed a federal complaint against the University of Toledo, alleging unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Following discovery, the district court granted in part and denied in part the University's motion for summary judgment. Specifically, the court dismissed Kovacs's retaliation claim based on her termination, but allowed her retaliation claim based on her demotion to proceed to trial. In dismissing the retaliatory termination claim, the district court found that Kovacs's voicing her objection to Tracey Brown's promotion in October 2020 was protected activity under Title VII.

---

[1] Title VII requires employees allegedly aggrieved by employment discrimination to pursue administrative remedies through the Equal Employment Opportunity Commission or an equivalent state or local agency before pursing their claims in court. 42 U.S.C. § 2000e-5(e)(1).

But the court found that Kovacs failed to show the University terminated her employment in February 2021 because of that protected activity.

The parties agreed to dismiss the retaliatory demotion claim with prejudice. This stipulation rendered the court's summary-judgment ruling final and appealable under 28 U.S.C. § 1291.

## ANALYSIS

Kovacs appeals the district court's summary-judgment ruling dismissing her retaliatory termination claim. We review the court's judgment de novo. *George v. Youngstown State Univ.*, 966 F.3d 446, 458 (6th Cir. 2020).

For Title VII retaliation claims based on circumstantial evidence, we apply the *McDonnell Douglas* burden-shifting framework. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). Under this framework, Kovacs must first establish a prima facie case by showing: "(1) [s]he engaged in activity protected by Title VII; (2) [her] exercise of such protected activity was known by the [University]; (3) thereafter, the [University] took an action that was 'materially adverse' to [her]; and (4) a causal connection existed between the protected activity and the materially adverse action." *George*, 966 F.3d at 459 (quoting *Laster*, 746 F.3d at 730). If Kovacs makes a showing of these elements, then the burden shifts to the University to proffer "a legitimate, non-retaliatory reason" for its adverse employment action. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 777 (6th Cir. 2018). If the University does so, then the burden shifts back to Kovacs "to demonstrate that [the University's] proffered reason is actually a pretext to hide unlawful retaliation." *Id.* (cleaned up) (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007)).

For purposes of this appeal, we assume without deciding that Kovacs engaged in activity protected by Title VII and focus on the causation element. To satisfy this element, a plaintiff "must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects." *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 543 (6th Cir. 2003) (citations omitted). One way to make this showing is through "close temporal proximity between the adverse employment actions and the protected activity." *Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013) (citing *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009)).

Here, the district court noted correctly that temporal proximity with a four-month time gap was, by itself, insufficient to satisfy causation. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 449 (6th Cir. 2020) ("[A] roughly 75-day delay between [plaintiff's] protected activity and an adverse employment action is not, standing alone, a convincing case for proving causation." (citation omitted)); *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 550 (6th Cir. 2008) ("In this circuit, a period of more than four months was found to be too long to support an inference of causation." (collecting cases)). In cases like this one where the time gap is too long to establish causation, "the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (citation omitted). But the district court found Kovacs failed to point to any other evidence of causation.

On appeal, Kovacs's primary argument is that the district court failed to properly weigh the OCRC's probable-cause finding that the University engaged in unlawful retaliation. In her view, the OCRC report, plus the four-month temporal proximity between her protected activity and the termination of her employment, created a material-fact question as to causation.

We disagree. We have previously instructed district courts that, "at the summary judgment stage, [an OCRC] report ought to be considered for the factual material it contains to determine if a fact question is raised." *Alexander v. CareSource*, 576 F.3d 551, 562 (6th Cir. 2009). At the same time, there may be "circumstances relating to the trustworthiness of the report" that warrant giving the report "little weight." *Id.* at 563.

On the particular facts of this case, the district court was right to give the OCRC report little to no evidentiary weight. In concluding that the University engaged in unlawful retaliation, the OCRC report focused on Wynn's January 2021 communications with McKether. To recap, Wynn alleged the University engaged in race discrimination by firing him and two other Black HR directors, whereas the University merely demoted Kovacs (a white HR director) and maintained her salary. Based on these facts, the OCRC report inferred that the University's later termination of Kovacs's employment was "a cover up for race discrimination." RE 1-6, OCRC Report, PageID 34.

But as the district court correctly noted, the OCRC report "confuse[d] the issues that are relevant" to Kovacs's case by "blend[ing] its analysis of race discrimination with its analysis of retaliation." RE 40, Order Denying Mot. for Reconsideration, PageID 2804-05. Indeed, the report's analysis tended to support a race-discrimination claim, not a retaliation claim. *See* RE 1-6, OCRC Report, PageID 33-34 (concluding that "[h]ad it not been for [Kovacs's] *race* it would not have been necessary for [the University] to remove her" (emphasis added)). Race discrimination and retaliation are separate Title VII claims analyzed under separate frameworks, *Michael*, 496 F.3d at 595, and Kovacs never brought a race-discrimination claim before the district court. She instead brought a retaliation claim.

The probable-cause determination aside, Kovacs also identifies certain facts underlying the OCRC report that, in her view, should have led the district court to find a causal connection between Kovacs's October 2020 activity and her February 2021 termination. *See* CA6 R. 18, Appellant Br., at 36-37. But none of those facts establish causation. Many of them relate to the conversation between Wynn and University officials in January 2021. By pointing to those facts, Kovacs repeats the OCRC report's mistake of conflating the analysis of race discrimination with the analysis of retaliation. If anything, the facts about potential racial discrimination tend to undermine Kovacs's retaliation claim by providing an alternative reason for the University's termination of her employment, which in turn would break the causal link between any protected activity and her termination.

Likewise, the remaining facts identified by Kovacs do not help her case. They concern her short tenure after being demoted, reduced job responsibilities in the new role, and an alleged absence of performance issues, none of which shows the University fired her *because* she objected to Tracey Brown's promotion.

In short, the district court correctly concluded that the OCRC report did not help establish causation. In such cases, "the differing *conclusion* in the agency report does not by itself establish a material issue of fact, and there is no error by the district court in not assigning evidentiary weight to that conclusion." *Alexander*, 576 F.3d at 563. And beyond the OCRC report, Kovacs points to no other circumstantial evidence of causation. Her only other argument is that Schroeder, who allegedly had a role in firing Kovacs, was aware of Wynn's allegations of race discrimination. For the reasons discussed, this point—even if true—might tend to support a racial discrimination claim, which Kovacs never made, but it does not support the retaliation claim she actually brought.

## CONCLUSION

For these reasons, we affirm.