NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0382n.06

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 24, 2010**
LEONARD GREEN, Clerk

KEITH D. HILL,                                )
                                             )
    **Plaintiff-Appellant,**                )    ON APPEAL FROM THE
                                             )    UNITED STATES DISTRICT
v.                                           )    COURT FOR THE WESTERN
                                             )    DISTRICT OF TENNESSEE
R. JAMES NICHOLSON, Secretary,               )
U.S. Department of Veterans Affairs,         )
                                             )    **O P I N I O N**
    **Defendant-Appellee.**                 )
_____   )

Before:  MARTIN, SILER, and MOORE, Circuit Judges.

KAREN NELSON MOORE, Circuit Judge.  Plaintiff-Appellant Keith D. Hill appeals the

district court's adverse summary-judgment ruling with respect to his Title VII suit against the

Secretary of Veterans Affairs, Defendant-Appellee R. James Nicholson (hereinafter "the VA").  Hill

argues that he has presented sufficient evidence from which a jury could find that he was

discriminated against because of his race, subjected to a hostile work environment, and retaliated

against for engaging in protected activity.  For the reasons stated below, we **REVERSE** the district

court's ruling with respect to Hill's retaliation claim, except insofar as that claim is based upon the

VA's alleged decision to deprive Hill of his office, and **REMAND** for further proceedings.  We

**AFFIRM** the district court's judgment in all other respects.

## I.  BACKGROUND

Prior to 2001, a white individual named Delvee Soles worked at the Veterans Administration Medical Center ("VAMC") in Memphis, Tennessee, as a "cook foreman."  The paygrade for this position was WS-11.  After Soles retired in December 2000, the position was renamed "cook supervisor" and the pay level was reduced to WS-8.  Hill, an African-American, applied for and received the "cook supervisor" position in May 2001.  Soles was rehired after his retirement to assist in the kitchen until a replacement was found, and Soles helped to train Hill once Hill was hired.  When Soles held the position, he had the assistance of an administrative dietitian and a clerk.  Both these positions were eliminated, however, after Soles retired.  Hill also claims that he had one less cook than Soles.

In October 2001, Hill was called to a period of active duty in the Navy.  According to Hill, his supervisor, Ann Frogge, was reluctant to let Hill go on active duty.  Hill claims that, after his commanding officer told Frogge that she had no choice, Frogge agreed to let Hill take leave, but she denied his request to obtain additional job training on his days off, and she also encouraged Hill to quit his cook-supervisor position altogether.  Hill returned to the VAMC in November 2002.

On January 13, 2003, Frogge had a meeting with Hill and the four supervisors whom Hill supervised, at which time Frogge informed them that there was a patient undergoing radiation treatment whose meals should be served on a disposable tray.  Due to an error, the patient's tray was initially delivered on a non-disposable tray, though the error was discovered before any harm was done.  As a result, Frogge gave Hill "written counseling" on January 15, although Hill claims that

he was not at fault. Doc. 33-1 at 17 (EEOC Hr'g Tr. at 39). None of the supervisors whom Hill supervised, all of whom were African-American, were disciplined.

On March 25, Frogge told Hill that she wanted to meet with him every Friday to review his performance. According to Hill, Soles told him that Soles had also made mistakes and yet never had to attend similar meetings. At the March 25 meeting, Hill told Frogge that he was going to file an EEO complaint and on March 27, Hill contacted the Office of Resolution Management ("ORM").[1]

After Hill contacted the ORM, he claims that Frogge suddenly started coming into the kitchen frequently to harass him about trivial problems. Hill claims, however, that this never occurred during the time period when Soles was training him.

On April 18, Frogge changed Hill's performance standards. The previous performance standards had been in place since the time of Hill's hiring and allowed for at least forty-four "deviations" per year. Doc. 33-1 at 33 (EEOC Hr'g Tr. at 61). The new performance standards, by contrast, consolidated many categories of assessment and as a result allowed only for four "incidents" a year. *Id.* The standards for the other supervisors and cooks, however, remained essentially the same. During a subsequent EEOC administrative hearing, Debra Gilliland, the Labor Relations Specialist who recommended that Frogge change Hill's performance standards, explained that the previous standards were redundant and difficult to follow, and that the change was "[t]o make them easier for both management and the employee to use and understand as a guide of the standards he was expected to attain." *Id.* at 46. When asked why the changes were made when they

---

[1]Hill repeatedly claims that he filed his EEO complaint in March 2003. Hill, however, only spoke with a counselor on that date. The complaint itself was not filed until May 5.

were, Gilliland explained that it was "a good time" because the rating cycle ended on March 31, so that if the performance standards were changed in April, "the employee would be operating under those new standards for the entire year." Doc. 22-9 at 7-8 (EEOC Hr'g Tr. at 138-39). According to the VA, Frogge requested copies of the performance standards used by other employers across the country before making her revisions. The VA also claims that Hill was given an opportunity to comment on the proposed changes and yet did not, an assertion that Hill does not dispute.

On April 21, Hill claims that Frogge told all of the supervisors that they had to complete their performance appraisals by May 31, but Frogge later told Hill that he had only four days, despite the fact that Hill was understaffed, overworked, and had no training in completing employee appraisals. According to Hill, he did not complete the evaluations in four days and Frogge responded by sending him to receive additional training. According to Frogge, Hill later completed his evaluations prior to May 31, an assertion that Hill does not dispute.

On May 5, 2003, Hill filed an EEO Complaint of Employment Discrimination. In August 2003, Hill claims that Frogge deprived him of his office and gave it to a white dietitian who was not a supervisor. Hill, however, never amended his EEO complaint to include this alleged incident.

Following an evidentiary hearing, an administrative law judge with the EEOC issued a "Preliminary Decision" finding mostly in favor of the VA although concluding that Frogge unlawfully retaliated against Hill. Nonetheless, Hill withdrew his administrative complaint, and, on October 26, 2005, he filed this complaint in the United States District Court for the Western District of Tennessee. In particular, Hill's federal-court complaint alleges that the VA violated Title VII of the Civil Rights Acts of 1964 and 1991 by discriminating against him on the basis of race, subjecting

4

him to a hostile work environment based on race, and retaliating against him after he engaged in protected activity. On March 31, 2008, the district court granted the VA's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," treating it as a motion for summary judgment. First, the court concluded that Hill had failed to exhaust his administrative remedies with respect to all events that occurred on or before January 15, 2003, because Hill did not contact an EEO counselor within forty-five days of these events. The court then dismissed Hill's claims of discrimination and retaliation, except insofar as they were based on Hill's claim that Frogge gave his office to a white dietitian. The district court also dismissed Hill's claim of hostile work environment.

The VA then filed a "Second Motion to Dismiss" arguing that Hill's discrimination claim based on the loss of his office was not properly exhausted because Hill never amended his EEO complaint to assert a claim related to this incident. Furthermore, the VA argued that, because Hill's complaint never alleged any facts regarding the loss of his office, Hill's retaliation claim should be dismissed as well. The district court agreed and granted the motion, again treating it as a motion for summary judgment. Hill appealed.

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's decision to grant a motion for summary judgment. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 373, 377 (6th Cir. 2009). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of

law." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009) (internal quotation marks omitted).

## B. Exhaustion of Remedies

The VA argues that Hill failed to exhaust his administrative remedies with respect to all events on and prior to January 15, 2003 because he failed to contact an EEO counselor within forty-five days of that date. The VA also argues that Hill failed to exhaust his claim with respect to the loss of his office by failing to amend his EEO complaint to include this allegation. We decline to address the question of exhaustion, however, as we are able to dispose of these claims on the merits. In doing so, we note that exhaustion is not a jurisdictional prerequisite. *See McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002). We acknowledge that this court has previously stated that the requirement that an allegation be included in an EEOC charge *is* jurisdictional. *See, e.g., Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991). But this preceded the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), in which the Court cautioned that a requirement is jurisdictional only when Congress "clearly states" that this is the case. *Arbaugh*, 546 U.S. at 515. Applying *Arbaugh*, a panel of this court has recently held that the Age Discrimination in Employment Act's requirement that a claim be presented in an EEOC charge is *not* jurisdictional. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 401-02 (6th Cir. 2008). We conclude that *Allen*'s reasoning should also apply in the Title VII context. *Cf. Bacon v. Honda of Am. Mfg., Inc.*, 192 F. App'x 337, 341 (6th Cir. 2006) (unpublished opinion) (suggesting, without deciding, that the requirement that a Title VII allegation be included in an EEOC complaint is not

jurisdictional post-*Arbaugh*). Therefore, we will assume for purposes of our analysis that Hill has properly exhausted all of his claims.

**C. Discrimination Based on Race**

Hill argues that the VA discriminated against him based on his race on several occasions. Hill has presented no direct evidence of discrimination, but he instead relies upon the *McDonnell Douglas* burden-shifting framework. Under that framework, Hill must first satisfy his prima facie case by presenting evidence from which a jury could find that:

> (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.

*White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2380 (2009). "Once the plaintiff establishes this *prima facie* case, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Id.* "[I]f the defendant succeeds in this task, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext." *Id.* As explained below, Hill has failed to establish a prima facie case, and therefore we need not consider whether Hill has provided sufficient evidence to rebut any of the VA's legitimate, non-discriminatory explanations for the actions it took.

**1. Lack of Dietitian, Clerk, and Cook**

Hill first argues that he was discriminated against because the clerk and dietitian positions were eliminated after Soles retired. Hill also claims that Soles had an extra cook and that Hill did

not. Hill's claim fails because a reasonable jury could not find that Soles was "similarly situated" to Hill. For a plaintiff to show that a non-protected employee is similarly situated, he must "prove that all of the *relevant* aspects of his employment situation were nearly identical to those of [the non-minority's] employment situation." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (internal quotation marks omitted) (alterations in original). Hill worked at the VAMC during a different time period than Soles,[2] however, and the position that Hill applied for had a different title and a pay grade three levels lower. Hill did testify that his and Soles's positions had the same job description. Hill, however, did not provide any evidence as to the content of those job descriptions, nor is there any indication as to whether those descriptions give any insight into the quantity of work that Soles and Hill were expected to perform. In light of the fact that Soles and Hill occupied facially different positions, a jury would need more information before it could find sufficient similarity. Therefore, Hill has failed to produce evidence that Soles's position was similar to his own in all relevant respects, and thereby Hill has failed to satisfy the fourth element of the prima facie case.

### 2. Written Counseling on January 15, 2003

Hill also claims that he was discriminated against when Frogge gave him written counseling following the incident with the non-disposable tray. This claim fails, however, because no reasonable jury could find this counseling to be an "adverse employment decision." An adverse decision requires "a significant change in employment status, such as hiring, firing, failing to

---

[2]Although at one point Hill and Soles did work side-by-side, this was after Soles had retired and was working as a trainer. At that point, they were performing different functions.

promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *White*, 533 F.3d at 402 (internal quotation marks omitted). Here, there is no indication that Frogge's counseling had any long-term impact on the terms or conditions of Hill's employment. *See id.* ("In general, a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary." (internal quotation marks omitted)). Furthermore, there are again no similarly situated non-protected individuals who received better treatment. Hill presented no evidence that Soles was involved in a similar incident, and the other supervisors who Hill claims went undisciplined were all African-American.

### 3. Friday Meetings with Frogge

Hill also claims that Frogge discriminated against him by requiring him to meet with her every Friday. There is no evidence, however, that these meetings had any adverse effect on Hill's employment status. Nor is there any evidence of a similarly situated non-protected individual who was treated more favorably. Although Hill stated in his deposition that Soles told him that Soles never had to attend such meetings, this is inadmissible hearsay. *See Alexander v. Caresource*, 576 F.3d 551, 558 (6th Cir. 2009) (explaining that hearsay evidence cannot be considered in opposition to a summary judgment motion). Furthermore, with respect to Hill's assertion that "other white people" made mistakes and yet did not have to meet with Frogge, Doc. 22-3 at 30 (Hill Dep. at 183), Hill identifies no such individuals and presents no evidence as to whether they were similarly situated.

### 4. Changing Hill's Performance Standards

Hill also argues that he was discriminated against when Frogge changed his performance standards. Once again, however, there are no similarly situated non-protected individuals. During the EEOC hearing, Hill testified that no other supervisor or cook had his or her standards changed. There is no indication, however, that any of these employees were non-minorities. Moreover, at the hearing, Debra Gilliland, a Labor Relations Specialist at the VAMC, testified that Frogge directly supervised only two employees—Hill and Catherine Austin—and would be expected to review only their standards. Hill never contradicted this testimony and has failed to provide any evidence that Austin held a position similar to Hill's. Finally, Hill cannot compare himself to Soles because Soles retired nearly two-and-a-half years prior to the decision to change the standards.

### 5. Requiring Hill to Complete His Employee Appraisal in Four Days

Hill also argues that he was discriminated against when, on April 21, Frogge told him to complete his employee appraisals in four days when all of the supervisors whom Hill supervised had until May 31 to complete their appraisals. As mentioned previously, however, all of the subordinate supervisors who Hill claims were treated differently were African-American. Furthermore, Hill admits that he did not complete the appraisals in four days, and that Frogge's only response was to send him to get more training, after which he completed the appraisals by May 31. Therefore, there was no adverse employment decision.

### 6. Hill's Loss of His Office

Finally, Hill claims that he was discriminated against in August 2003 when Frogge "took [his] office from [him] and gave it to a white non-supervising dietician." Doc. 33 at 3 (Hill Aff. at

¶ 10). Hill's complaint, however, failed to state a claim with respect to this incident because his complaint does not allege any facts regarding the loss of his office. A complaint must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (alterations in original). Here, Hill's complaint provides a detailed timeline of all the events that occurred up until July 2003 and then stops, failing to provide a single allegation of any events occurring beyond that point. As a result, the complaint gave the VA no notice that Hill's claim might be premised on his loss of his office. Hill responds by arguing that his response to the VA's interrogatories put the VA on notice. The "course of proceedings" exception upon which Hill is presumably relying, however, applies only when the complaint is "ambiguous." *Harris v. Bornhorst*, 513 F.3d 503, 516 (6th Cir.), *cert. denied*, 128 S. Ct. 2938 (2008). Hill's complaint is not ambiguous as it does not allege a single fact relating to the loss of his office. Furthermore, although Hill points out that he potentially could have amended his complaint, he never moved to do so.

### 7. Conclusion

Therefore, for the reasons stated above, the district court did not err in granting the VA's motion for summary judgment with respect to Hill's claim of discrimination.

## D. Hostile-Work-Environment Claim

Hill also argues that all of Frogge's actions, when viewed as a whole, created a hostile work environment. In particular, Hill's harassment claim is based on the conduct discussed in Section C

as well as Frogge's allegedly telling Hill to quit when Hill went on military leave and her alleged

"nitpicking" while Hill was in the kitchen. Appellant Br. at 31-32.[3]

To establish a prima facie case for a hostile-work-environment claim, Hill must provide

evidence from which a jury could find that:

> (1) []he is a member of a protected class; (2) []he was subjected to unwelcomed racial harassment; (3) the harassment was race based; (4) the harassment unreasonably interfered with h[is] work performance by creating an environment that was intimidating, hostile, or offensive; and (5) employer liability

*Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007). The VA argues that Hill has

not satisfied the fourth prong insofar as Frogge's actions merely amounted to "workplace

interactions." Appellee Br. at 29-30. The fourth prong of this test requires the plaintiff to provide

evidence that "under the totality of the circumstances the harassment was sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive working

environment." *Clay*, 501 F.3d at 707 (internal quotation marks omitted). "The severe or pervasive

requirement has both an objective and a subjective component." *Id.* The court must

> examine, under the totality of the circumstances, the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's performance.

---

[3]The district court found that Hill's allegations with respect to the "nitpicking" were not supported by the record. Doc. 42 (Dist Ct. Order 3/31/08 at 25 n.8, 28 n.9). This is incorrect, however, as Hill's testimony during the EEOC hearing provides an evidentiary basis for this claim. *See* Doc. 33-1 at 23-30 (EEOC Hr'g Tr. at 48-50, 53-55, 57-58).

*Id.* (internal quotation marks and brackets omitted). Although this inquiry is "quintessentially a question of fact," summary judgment is appropriate when no reasonable jury could find in favor of the plaintiff. *Id.* (internal quotation marks omitted).

Even if Hill could show that race motivated Frogge's harassment (which seems difficult given the lack of similarly situated non-protected individuals), we agree with the VA that, viewing all of the facts in the light most favorable to Hill, no reasonable jury could conclude that Hill was subject to an "intimidating, hostile, or offensive" environment. *Id.* at 706. Frogge's alleged harassment did not "humiliate" or "intimidate" Hill, given that most of Frogge's actions involved mere work-related criticisms and heightened performance expectations. *See id.* at 702, 708 (concluding that constant criticism of African-American employee was "not actionable" for purposes of a hostile-environment claim). Likewise, Frogge's actions were neither physically invasive nor racially suggestive. Panels of this court have dismissed claims of hostile work environment under more compelling factual scenarios than those here. *See Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 352 (6th Cir. 2005) (noting that "a hostile work environment [based on sex] was not shown where, over a two month period, a male supervisor continuously made sexually suggestive comments about the female plaintiff's appearance, touched her breast as he removed and replaced a pen from her shirt pocket, leered at her, and told her that if he had someone like her, he would never let her leave the house" (citing *Stacy v. Shoney's, Inc.*, No. 97-5393, 1998 WL 165139, at *1-3 (6th Cir. 1998))). Therefore, the district court did not err in granting the VA's motion for summary judgment with respect to Hill's claim of hostile work environment.

13

**E. Retaliation Claim**

Finally, Hill argues that Frogge retaliated against him after Hill contacted an EEO counselor on March 27, 2003, and he points to all of the incidents described above which occurred after that date. To establish his prima facie case of retaliation, Hill must provide evidence that:

> (1) [Hill]. . . engaged in protected activity, (2) [his] employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against [Hill], and (4) there was a causal connection between the protected activity and the adverse employment action.

*Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009) (internal quotation marks omitted). If Hill succeeds in establishing his prima facie case, then the burden of production shifts to the VA "to produce evidence of a legitimate, non-discriminatory reason for its actions." *Id.* (internal quotation marks omitted). "If [the VA] meets this burden, [Hill] bears the burden of demonstrating that this legitimate reason is pretextual." *Id.*

**1. Harassment in the Kitchen, Employee Appraisals, and Performance Standards**

Hill claims that Frogge retaliated against him by repeatedly going into the kitchen to harass him, rushing his employee appraisals, and changing his performance standards. The VA does not dispute that Hill engaged in protected conduct and that Frogge knew that Hill did so. The VA also has not argued that Hill failed to satisfy the causation prong of the prima facie test. The VA does argue, however, that with respect to the kitchen visits and employee appraisals, Hill has failed to provide evidence from which a reasonable jury could conclude that he suffered an "adverse employment action." The VA also argues that it has provided non-discriminatory reasons for changing Hill's performance standards and that Hill has failed to show pretext.

14

### a. Adverse Employment Action

For the purposes of a retaliation claim, an adverse employment action is one that "'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "[A] plaintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context," *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595-96 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 1657 (2008), although Hill must still present evidence that he suffered an "'an injury or harm,'" *Garner*, 554 F.3d at 639 (quoting *Burlington*, 548 U.S. at 67).

We agree with the VA and the district court that Frogge's act of requiring Hill to complete his employee evaluations in four days could not possibly qualify as an adverse action because, as explained in Section II.C.4, the deadline was eventually extended. We also agree that, taken in isolation, Frogge's alleged "nitpicking" of Hill could not qualify as an adverse action because this harassment, by itself, amounts to little more than the kind of petty annoyances with which countless employees are expected to deal. Nonetheless, when assessing whether an employee was subjected to an adverse action, we must consider the employer's collective conduct. *See Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 599 (6th Cir. 2009) (unpublished decision). This means that Frogge's "nitpicking" must be considered along with Frogge's decision to change Hill's performance standards. Viewing Frogge's conduct in its totality, a reasonable jury could find that Hill suffered an adverse employment action. Frogge's actions had the effect of imposing heightened scrutiny on Hill while simultaneously reducing the number of mistakes which he was allowed to a

15

mere fraction of what the previous standards had permitted. In doing so, Frogge created an environment in which Hill was constantly exposed to the risk of failure, and a reasonable employee might understandably choose to forgo filing a complaint rather than be exposed to such conditions. *Cf. Michael*, 496 F.3d at 591-92, 596 (holding that a 90-day performance plan, under which the plaintiff was required to improve certain areas of performance or risk disciplinary action, was an adverse action). Given that the "adverse employment action" requirement presents a "relatively low bar," *id.* at 596, we conclude that Frogge's harassment of Hill in the kitchen and her decision to change his performance standards amounted to an "adverse employment action."

### b. Rebuttal

The VA, however, offers a non-discriminatory reason for changing Hill's performance standards. In particular, the VA points to the testimony of Gilliland, who explained that Hill's performance standards were changed because they were redundant and difficult to follow. Doc. 22-9 at 138-39 (EEOC Hr'g Tr. at 138-39). The question then becomes whether Hill has offered evidence from which a reasonable jury could find that this reason is pretextual. The district court found that Hill did not. We disagree.

A plaintiff can show pretext by providing evidence that the employer's reason for acting "(1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009) (internal quotation marks omitted). Similarly, pretext may be established by showing that the employer's decision was unreasonable. *Id.*

16

Here, a jury could infer pretext from the timing and context of the revisions in the performance standards. Austin testified at the EEOC hearing that management had been considering changing Hill's standards since his hire in 2001. Doc. 33-1 at 51 (EEOC Hr'g Tr. at 165). Therefore, a reasonable jury could question why the VA waited as long as it did to make the revisions. Austin explained that the VA never had the opportunity because Hill had been called to active duty. Hill returned, however, in the fall of 2002, and yet his standards were not changed until April 18, 2003—approximately three weeks after Hill contacted an EEO counselor on March 27.

The VA points to Gilliland's testimony that it was "a good time" to change the performance standards because the ratings cycle ended on March 31. Doc. 22-9 at 7 (EEOC Hr'g Tr. at 138). The problem with this explanation, however, is that there is no evidence that the end of the ratings cycle actually had anything to do with the VA's decision to wait. Gilliland herself explained that this timing was merely coincidental as she just happened to review Hill's standards at the end of March. *Id.* (Gilliland: "Well, at that particular time, it was when I reviewed [the performance standards]. But as it turned out, I mean, it was a good time."). Indeed, during the EEOC hearing, the ALJ asked Gilliland when changing the performance standards became "an issue." Doc. 33-1 at 47 (EEOC Hr'g Tr. at 148). Gilliland replied that this occurred "[w]hen [Frogge] came to me about having counselled Mr. Hill and talked to me about his performance" at which time Gilliland "asked [Frogge] if [Gilliland] could review [Hill's] performance plan . . . [a]nd . . . advised [Frogge] to revise [the performance standards] at that time." *Id.* In other words, the timing of the ratings cycle appears to have had no bearing on the decision to change Hill's performance standards.

Under these circumstances, a reasonable jury would still be faced with the same question: if the VA had been considering a revision in Hill's performance standards since 2001, and Hill had returned as early as the fall of 2002, why did his standards become "an issue" only immediately after the March 25 meeting during which Hill stated that he was going to file an EEO complaint? This is especially perplexing considering that there is no indication that Frogge raised any problems with Hill's performance standards when she met with Gilliland to discuss Frogge's March 25 meeting with Hill. It may be that Gilliland's sudden interest in Hill's performance standards simply happened to coincide with Hill's decision to engage in protected conduct, but a reasonable jury could find this timing to be too convenient.

We have observed that "while temporal proximity . . . cannot alone prove pretext, temporal proximity can be used [as] indirect evidence to support an employee's claim of pretext." *Asmo v. Keane, Inc.*, 471 F.3d 588, 598 (6th Cir. 2006) (internal quotation marks and citation omitted). Furthermore, the evidence here points not simply to temporal proximity, but also to the VA's arguably illogical decision to delay changing Hill's performance standards for nearly three years. Moreover, a jury might also find it relevant that the non-retaliatory explanation given by the VA during the EEOC hearing was never actually communicated to Hill. During his EEOC hearing, Hill testified that he asked Frogge why his standards were being made more stringent, and she simply replied that "it was just time to change them." Doc. 33-1 at 33 (EEOC Hr'g Tr. at 61). A reasonable jury might understandably conclude that, if in fact the standards were changed in part to benefit Hill, management would be quick to inform Hill of this fact.

18

Finally, we note that the ALJ who originally presided over this dispute found that the VA's explanations were pretextual, and even went so far as to call the VA's retaliatory conduct "worthy of condemnation." Doc. 33 at 46 (EEOC Prelim. Dec. at 27). "Prior administrative findings made with respect to an employment discrimination claim may . . . be admitted as evidence at a federal-sector trial *de novo*," *Chandler v. Roudebush*, 425 U.S. 840, 863 n.39 (1976); Fed. R. Evid. 803(8)(C), and therefore may also be considered at the summary judgment stage. *See Alexander*, 576 F.3d at 561-63 (explaining that an administrative finding of probable cause can be considered at summary-judgment stage). Under some circumstances, it may be inappropriate to consider administrative findings, such as where "there is an indication of a lack of trustworthiness." *Id.* at 563; Fed. R. Evid. 803(8)(C). Such does not appear to be the case here, however. Indeed, the ALJ's findings reflect a relatively thorough investigation insofar as the ALJ conducted a full-scale evidentiary hearing. *Alexander*, 576 F.3d at 563 (noting that whether a hearing was conducted is one relevant consideration). We have also concluded that administrative findings do not create a material issue of fact when the court has access to just as much of the evidence as did the agency. *Id.* Here, however, the ALJ was able to listen to the witnesses' testimony in its entirety and observe the demeanor of those witnesses. We, by contrast, are confined to a cold record consisting of nothing more than isolated excerpts.

Therefore, we conclude that the district court erred in finding that there was no question of material fact with respect to whether the VA's proffered reasons for changing Hill's performance standards were pretextual.

### 2. Hill's Loss of Office

Hill's retaliation claim is also based on Frogge's allegedly taking his office from him in August 2003. As discussed in Section II.C.6, Hill's complaint failed to allege any facts with respect to this incident. Therefore, pursuant to *Twombly*, 550 U.S. at 555, we must dismiss this component of Hill's retaliation claim.

### 3. Conclusion

Therefore, we conclude that the district court erred in granting the VA's motion for summary judgment with respect to Hill's retaliation claims, except insofar as that claim is premised on Hill's delayed assertion that the VA deprived Hill of his office.

### III. CONCLUSION

For the reasons stated above, we **REVERSE** the district court's decision to grant the VA's motion of summary judgment with respect to Hill's retaliation claim, except insofar as Hill's retaliation claim is premised upon his allegation that the VA deprived him of his office. We **AFFIRM** the district court's judgment in all other respects and **REMAND** for further proceedings consistent with this opinion.

No 09-5305
*Hill v. Nicholson, et al.*

**SILER**, Circuit Judge, concurring in part and dissenting in part. I concur in the majority opinion except for the retaliation discussion in Part II. E. I also concur with the majority that Hill does not have a retaliation claim for the loss of his office. However, I part with the majority on its finding that the changing of performance standards for Hill amounted to an adverse employment action.

The district court ruled against Hill on this issue, not for failure to make out a prima facie case, but because the VA articulated legitimate, non-discriminatory reasons for changing the performance standards and Hill failed to rebut that evidence by showing pretext. Nevertheless, I would affirm on the failure to make out a prima facie case because Hill did not suffer an adverse employment action as required by law.

The majority indicates that Hill must show that he suffered "'an injury or harm,'" citing *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009) (quoting *Burlington N.& Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006)). I fail to find that Hill has shown that he has been injured or harmed by the change of performance standards. There is no evidence that Hill's new performance standards were used as a means to intimidate, demote, fire, or otherwise sanction him. I concede that the changing of performance standards in Hill's case sounds similar to the 90-day performance plan in *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007). However, the retaliatory actions alleged in *Michael* included both the 90-day performance plan *and* the sanction of a brief placement on paid administrative leave. *Id*. Because this case does not include a similar sanction, I fail to find an adverse employment action. Exposing an employee

21

to *the risk* of an adverse employment action does not of itself constitute an adverse employment

action, even under the "relatively low bar" for retaliation claims.

Therefore, I would affirm the decision of the district court.