RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0221p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

SERGE ADAMOV,

        *Plaintiff-Appellant,*

    v.

U.S. BANK NATIONAL ASSOCIATION,

        *Defendant-Appellee.*

No. 12-6114

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:09-cv-00868—Charles R. Simpson, District Judge.

Argued: June 18, 2013

Decided and Filed: August 13, 2013

Before: KEITH, MOORE, and ROGERS, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Ben Basil, PRIDDY, CUTLER, MILLER & MEADE PLLC, Louisville, Kentucky, for Appellant. Doreen Canton, TAFT, STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Ben Basil, Don Meade, PRIDDY, CUTLER, MILLER & MEADE PLLC, Louisville, Kentucky, for Appellant. Doreen Canton, Ryan M. Martin, TAFT, STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellee.

───────────────

## OPINION

───────────────

ROGERS, Circuit Judge. Serge Adamov brought suit against his employer, U.S. Bank, and two of his superiors claiming unlawful discharge due to his Azerbaijani national origin and in retaliation for his complaints of discrimination. U.S. Bank claims that Adamov was discharged because he made a personal loan to a bank customer contrary to bank policy. The district court dismissed Adamov's retaliation claim *sua*

1

*sponte* on jurisdictional grounds, based on the court's belief that the claim had not been exhausted. The court later determined on summary judgment that Adamov's national-origin-discrimination claim failed. Although the district court properly granted summary judgment on the discrimination claim, the retaliation claim should not have been dismissed *sua sponte* because the administrative-exhaustion requirement is not jurisdictional.

Adamov immigrated to the United States from Azerbaijan, a former Soviet republic, in 1992. He began working at the predecessor of U.S. Bank in 1998, was promoted over the course of his employment, and at the time of his termination was a district manager in Louisville, Kentucky. Adamov maintained an excellent employment record during his time at U.S. Bank. He was a "high-performing district manager"—for example, receiving "Top Producer" honors in Louisville for twenty quarters—and received positive performance reviews.

In 2005, U.S. Bank hired Rick Hartnack as Vice-Chairman, which was a position three levels up the corporate hierarchy from Adamov. Adamov reported to Regional Manager Arlene Mockapetris, who reported to Executive Vice President Steven SaLoutos, who reported to Hartnack. On the handful of occasions on which Hartnack and Adamov interacted, Hartnack made statements that Adamov found offensive. When the two first met, in or around 2005, Adamov told Hartnack he was from Louisville, to which Hartnack responded "Oh, your accent gives you up." On another occasion, Hartnack approached Adamov to congratulate him for a sales award he won, but stated during their conversation "Immigrants don't usually climb the corporate ladder." Finally, while Hartnack was giving a speech at a conference of district managers in 2008, he made the comment "I was talking to my managers and they looked at me like I was speaking Russian." Adamov, who had believed himself to be next in line for a promotion, took the statement as "a public slap in the face." At that time, Adamov began to make up his mind that the reason he had not yet been promoted was that Hartnack harbored animus based on Adamov's national origin.

Adamov brought these concerns to Mockapetris, his direct supervisor, some time in 2009. Mockapetris spoke with Hartnack and then assured Adamov that Hartnack was not prejudiced against him. Shortly thereafter, U.S. Bank opened an investigation into Adamov's banking activities.

According to U.S. Bank, it received a request for an investigation from its corporate Anti-Money-Laundering Department on July 6, 2009. In addition to overseas wire-transfer activity, the investigation revealed a loan that Adamov had made to a friend and U.S. Bank customer named Dmitri Shtapov in 2007. Adamov had given Shtapov a check for $10,000, which Shtapov repaid without interest after approximately two weeks. Adamov characterizes the loan as a informal transaction with a college friend whom Adamov brought to the bank as a customer years earlier, when Adamov's employment began. Despite this characterization, the U.S. Bank investigation concluded that employee loans to bank customers violated the bank's ethics policy, and U.S. Bank terminated Adamov's employment on August 31, 2009.

The bank submitted a September 2008 ethics policy to the district court in support of its summary-judgment motion, and the court based its analysis in part on that document. Although the policy went into effect after the date of the loan, no prior policy was introduced by either Adamov or the bank. The 2008 policy stated, "employees and their families are prohibited from borrowing money from (or lending money to) customers (other than financial institutions), suppliers, other employees, or independent contractors." There was no testimony that the policy differed prior to the date of that policy, and witnesses for the bank testified that making a personal loan to a customer is an ethics violation.

Adamov claims in his appellate brief that he was surprised that the investigation led to this result, both because he considered the infraction, if it was one, to be minor, and because his previous interactions with the Anti-Money-Laundering Department had led him to believe that his activity was acceptable. However, his testimony indicated that the Anti-Money-Laundering Department had approved only his wire-transfer

activity with overseas family, and that personal loans to bank customers were never at issue prior to the 2009 investigation.

Following his termination, Adamov filed state-law discrimination claims in Kentucky state court against the bank, Hartnack, and SaLoutos. The defendants removed the suit to federal district court based on diversity jurisdiction. The defendants filed a motion to dismiss, claiming that Adamov's state law claims were preempted by the National Bank Act, 12 U.S.C. § 24. The bank claimed that the Act preempts state discrimination laws regarding the employment and termination of certain national bank officers. As part of his response, Adamov averred that he would be amending his complaint to include non-preempted federal discrimination claims. At the same time, he submitted a draft EEOC charge, which was unsigned and undated and contained only a national-origin-discrimination claim. Before the motion was decided, Adamov actually filed his charge—which pled national origin discrimination and, unlike the draft charge, retaliation—with the EEOC. When he received a "right to sue" letter from the EEOC based on his charge, Adamov filed a motion to amend his complaint, which the court granted while simultaneously dismissing as moot U.S. Bank's pending motion to dismiss the original complaint.

The defendants then filed a motion to dismiss Adamov's amended complaint, arguing that he was not permitted to bring his claims against the individual defendants and that the factual allegations were insufficient as a matter of law, and renewing their preemption argument. The second motion to dismiss did not allege failure to exhaust administrative remedies, and Adamov did not include any of his EEOC documents in his response. Nevertheless, the district court relied on the draft charge attached to Adamov's response to the first motion to dismiss and ruled *sua sponte* on the exhaustion issue. The court concluded that Adamov had not exhausted his retaliation claim and that the court therefore lacked subject-matter jurisdiction to hear the claim. The court also dismissed Adamov's claims against Hartnack and SaLoutos for failure to state a claim.

Following discovery, the district court granted the bank's motion for summary judgment on the remaining national-origin-discrimination claim. Adamov appealed. He

also filed a motion in the district court to supplement the record, seeking to add the EEOC charge that he filed as well as his "right to sue" letter from the EEOC. The district court issued an order stating that it lacked jurisdiction to supplement the record, due to the pendency of this appeal. The court also noted "that Fed. R. App. P. 10(e) does not empower a district court to accept materials which alter the record after a notice of appeal has been filed. The purpose of appellate rule 10(e) is to 'allow the district court to correct omissions from or misstatements in the record for appeal, not to introduce new evidence in the court of appeals.'" *Id.* (quoting *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 641 n.10 (6th Cir. 1982) (internal citation omitted)).

With respect to Adamov's national-origin-discrimination claim, he failed to demonstrate that the legitimate, nondiscriminatory reason the bank offered to explain his termination was in fact pretext for unlawful discrimination.[1] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05 (1973). Adamov separates his challenge into two points of error—first, that the court improperly relied upon a later version of the bank's ethics policy, and second, that the court erred in its analysis of the circumstantial evidence—but both claims fail because Adamov simply failed to carry his burden of proving pretext. Although the court appears to have based its decision on a version of the written ethics policy that was enacted after the date of Adamov's loan to Shtapov, the bank has produced additional evidence that Adamov was fired for making a personal loan to a bank customer in violation of bank policy. Moreover, Adamov has failed to introduce evidence of a contrary bank policy or sufficient circumstantial evidence to convince any rational trier of fact that his termination was secretly a result of national-origin discrimination.[2]

Adamov's opening brief on appeal alleges that a 2004 policy existed that did not forbid employee-to-customer loans; however, in response to the bank's brief, he

---

[1] The parties appear to concede, and it is safe to assume for purposes of this case, that Adamov made out a prima facie case of discrimination, *i.e.*, "(1) that he was a member of a protected class; (2) that he was discharged; (3) that he was qualified for the position held; and (4) that he was replaced by someone outside of [his] protected class." *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009).

[2] Although the bank must produce accurate documentation on proper request, we do not have an adequate record on which to rule on that issue.

concedes in his reply brief that the sole 2004 document presented to the court does not constitute an enforceable ethics policy. He maintains, however, that "[t]his does not negate the fact that the Bank has failed to produce evidence in support of its motion that it had an ethics policy that expressly prohibited loans to friends as of the date the loan was made." This argument mischaracterizes the burden on the bank and improperly shifts the burden of showing pretext away from Adamov. It was Adamov who needed to "demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a . . . discriminatory decision." *See McDonnell Douglas*, 411 U.S. at 805. The bank satisfied its burden by offering a legitimate nondiscriminatory reason for Adamov's discharge. *See id.* at 802. The bank introduced affidavits and testimony of bank officials explaining the ethics policies, as well as evidence that it conducted an independent investigation that revealed activity that its employees believed violated company policy. The bank's "burden is one of production, not persuasion; it can involve no credibility assessment." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation marks omitted). Even if a written policy did not exist at the time of Adamov's loan, Adamov's burden required him to show a genuine question of material fact that the reasons given by the bank and its employees were not the true reasons for terminating him. *See McDonnell Douglas*, 411 U.S. at 804–05.

Adamov claims that the remaining evidence demonstrates pretext, but that evidence is either irrelevant or insufficient. First, he argues that contradictions about Hartnack's role in the termination decision suggest that his termination was the result of national-origin discrimination. However, the testimony is clear that the decision to terminate Adamov did not begin or end with Hartnack. There is no evidence in the record that suggests that Hartnack initiated the investigation, nor was there any testimony tending to support Adamov's theory that Hartnack's discriminatory animus even steered the company toward the decision to terminate Adamov. While Mockapetris testified that she wasn't aware of any involvement Hartnack may have had in the investigation, Adamov suggests that SaLoutos's testimony casts doubt on Mockapetris's version of events. SaLoutos described Hartnack's involvement by saying that "he was

aware [of] what we were going to be doing" and "I would share with him any—any senior management termination information." He added that the two men discussed the matter at least once on the telephone. Adamov also relies on a note that says "Ricks support" with reference to the termination decision. None of this evidence supports Adamov's argument that Hartnack was the "primary figure in the decision making chain of command" that made the termination decision. The evidence clearly supports the bank's showing that the investigation began wholly independently of Hartnack's influence and was brought to Hartnack when it had already received the support of the investigation team in Anti-Money-Laundering Department and Adamov's direct supervisor. And although both SaLoutos and Mockapetris claim ultimate responsibility for the decision to fire Adamov, this does nothing to support the conclusion that it was in fact Hartnack who led the charge.

Second, Adamov argues that the temporal proximity of the investigation to his complaints of discrimination indicates pretext. Adamov does not make an argument that the temporal proximity of Hartnack's comments—which were spaced out over time between 2005 and 2008—to his termination is significant. Rather, he argues that his *complaint* of discrimination, which did not occur until 2009, occurred suspiciously close in time to the bank's investigation and to his subsequent termination. While this argument is relevant to a claim that he was fired in retaliation for his complaint—a claim that was dismissed by the district court—it is less probative with respect to the idea that the decision to terminate Adamov's employment was made on the basis of his national origin.

For these reasons, the district court was correct in granting summary judgment to the bank on the national-origin-discrimination claim.

The district court did err, however, in applying a jurisdictional analysis to the question of exhaustion of Adamov's retaliation claim. Because Congress has not explicitly restricted the court's jurisdiction in cases where a plaintiff has not exhausted administrative remedies, a district court may not dismiss the claim on jurisdictional grounds. This conclusion is supported by the Supreme Court's determination in

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), that Title VII's employee-numerosity requirement is not jurisdictional. *Id*. at 504. In *Hill v. Nicholson*, 383 F. App'x 503 (6th Cir. 2010), we held in an unpublished opinion that, in light of the Supreme Court's decision in *Arbaugh*, administrative exhaustion is not a jurisdictional requirement under Title VII. *Id*. at 508. This conclusion has also been reached by other circuits. *See, e.g.*, *Vera v. McHugh*, 622 F.3d 17, 29–30 (1st Cir. 2010); *Douglas v. Donovan*, 559 F.3d 549, 556 n.4 (D.C. Cir. 2009).

The Supreme Court held in *Arbaugh* that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." 546 U.S. at 516. No such jurisdictional limitation exists with respect to Title VII's administrative-exhaustion requirements. Title VII discusses the EEOC process generally in 42 U.S.C. § 2000e-5. The statute describes the statute of limitations for filing a charge with the EEOC and the EEOC's duties to investigate and respond to the employee. 42 U.S.C. § 2000e-5(b), (e)(1); *Id* § 2000e-5(b). It also states that, if the EEOC dismisses a charge, or if the EEOC or the Attorney General has not filed suit or entered into a conciliation agreement with the employer after 180 days, the EEOC or the Attorney General must notify the employee, who may then file a lawsuit himself. *Id.* § 2000e-5(f)(1). The statute says no more about the exhaustion requirement or any connection between the EEOC process and a limit on courts' jurisdiction to hear Title VII cases.

The *Arbaugh* decision emphasized the deliberately broad grant of access to federal courts in 42 U.S.C. § 2000e-5(f)(3), which was enacted to avoid even the amount-in-controversy limitations otherwise in effect at the time of Title VII's passage and now "serve[s] simply to underscore Congress' intention to provide a federal forum for the adjudication of Title VII claims." *Arbaugh*, 546 U.S. at 505–06. The Court's reasoning in *Arbaugh* counseled against erecting bars to Title VII claims where Congress does not clearly seek to limit jurisdiction with a restriction. 546 U.S. at 515–16.

> [W]e think it the sounder course to refrain from constricting [28 U.S.C.] § 1331 or Title VII's jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3), and to leave the ball in Congress' court. If the Legislature clearly states

> that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue.

*Id.* (footnote omitted). Where, as here, the restriction is not expressed in jurisdictional terms in the statute, *see* 42 U.S.C. § 2000e-5(f)(1), the presence of congressional intent to restrict § 1331 and Title VII's jurisdiction-granting provision is as clearly lacking as it was in *Arbaugh*.

The district court properly granted summary judgment on Adamov's discrimination claim, and we affirm that decision. However, given that the question of administrative exhaustion is nonjurisdictional, U.S. Bank forfeited the argument that Adamov did not exhaust his retaliation claim by failing to raise it to the district court. Accordingly, we reverse the dismissal of the retaliation claim and remand to the district court for further proceedings consistent with this opinion.